UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA LYN MILBOURNE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security ) <br> Administration, ) <br> ) <br> Defendant. ) <br> ) | Case No. ED CV 15-1440-SP <br><br> MEMORANDUM OPINION <br> AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On July 20, 2015, plaintiff Tanya Lyn Milbourne filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability and disability insurance benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issues for decision, whether the Administrative Law

Judge ("ALJ") properly considered plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-16; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-10.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err in considering plaintiff's credibility. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-three years old on her alleged disability onset date, has a college degree in criminal justice and a master's degree in social work. AR at 30, 220, 225. Her past relevant work was as a social service worker, correctional counselor, and case worker. *Id.* at 64-66, 99, 225, 231-239.

On August 21, 2012 plaintiff filed an application for a period of disability and DIB, alleging an onset date of June 7, 2011, due to carpal tunnel in both hands, bulging disc, severe back pain, left leg numbness and burning, burning painful feet, and diabetes. *Id.* at 91, 101, 168-69, 224, 227, 261. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id.* at 91-110, 115-16.

On November 13, 2013, plaintiff, represented by an attorney, appeared and testified at a hearing before the ALJ. *Id.* at 27-64, 69-70. The ALJ also heard testimony from vocational expert Gloria Lasoff. *Id.* at 62-68, 70-79. On December 23, 2013, the ALJ denied plaintiff's claim for benefits. *Id.* at 11-22.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since June 7, 2011, the alleged onset date. *Id.* at 13.

At step two, the ALJ found plaintiff suffered from the following severe impairments: lumbar strain/sprain; degenerative disc disease of the lumbar spine;

and bilateral carpal tunnel syndrome, status post right carpal tunnel release. *Id*. The ALJ additionally found plaintiff's diabetes mellitus, probable diabetic neuropathy, diverticulitis, obesity, and sleep apnea were not severe impairments. *Id.* at 13-15.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 ("Listing"). *Id.* at 15.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform a range of light work, with the limitations that she could: lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for six hours out of an eight-hour workday with normal breaks; sit for six hours out of an eight-hour workday with normal breaks; occasionally climb ramps or stairs, but could not climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; perform frequent gripping and grasping, but no power gripping; and could not carry or use a firearm. *Id.* at 16.

The ALJ found, at step four, that plaintiff could perform her past relevant work as a social worker and a case worker. *Id.* at 21-22. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA"). *Id.* at 22.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3, 5-7. The ALJ's decision stands as the

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff contends the ALJ failed to make a proper credibility determination. P. Mem. at 3-16. Specifically, plaintiff contends the ALJ failed to provide clear and convincing reasons for discounting plaintiff's credibility. The court disagrees.

An ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[3] *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

[3] Defendant suggests the ALJ was only required to provide specific reasons supported by substantial evidence, rather than clear and convincing reasons. D. Mem. at 4-5. But the Ninth Circuit has explicitly rejected that argument. *See Burrell*, 775 F.3d at 1136-37. Accordingly, this court applies the clear and convincing standard.

1       "[A]n ALJ does not provide specific, clear, and convincing reasons for
2 rejecting a claimant's testimony by simply reciting the medical evidence in
3 support of his or her residual functional capacity determination." *Brown-Hunter*
4 *v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). To permit a meaningful review of
5 the ALJ's credibility determination, the ALJ must "specify which testimony [he]
6 finds not credible, and then provide clear and convincing reasons, supported by
7 evidence in the record, to support that credibility determination." *Id.* The ALJ
8 may consider several factors in weighing a claimant's credibility, including:
9 ordinary techniques of credibility evaluation such as a claimant's reputation for
10 lying; the failure to seek treatment or follow a prescribed course of treatment;
11 and a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th
12 Cir. 2008); *Bunnell*, 947 F.2d at 346-47. The ALJ may additionally consider
13 "inconsistencies either in [claimant's] testimony or between h[er] testimony and
14 h[er] conduct" and "testimony from physicians and third parties concerning the
15 nature, severity, and effect of the symptoms of which [s]he complains." *Light v.*
16 *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).
17       At the first step, the ALJ found plaintiff's medically determinable
18 impairments could reasonably be expected to cause the symptoms alleged. AR at
19 17. At the second step, because he did not find any evidence of malingering, the
20 ALJ was required to provide clear and convincing reasons for finding plaintiff
21 less credible. *Id.* Here, the ALJ discounted plaintiff's credibility because: (1)
22 plaintiff's "allegations are greater than expected in light of the objective
23 evidence of record" (*id.*); (2) plaintiff "retains the ability to perform activities of
24 daily living that is inconsistent with those of a disabled individual" (*id.*); and
25 (3) plaintiff received an "overall conservative course of treatment." *Id.* at 20; *see*
26 *id.* at 17-21.
27       As an initial matter, contrary to plaintiff's contention (P. Mem. at 5), the
28 ALJ specified those portions of plaintiff's testimony that he found lacking in

6

credibility:

> The claimant alleges disability due to back pain secondary to a fall she sustained at work . . . . [¶] Regarding her symptoms and limitations, the claimant stated she had back pain and radiculopathy to the left leg that made it hard for her to stand, walk, bend, and stoop. She confirmed that her back pain was constant . . . . The claimant denied the ability to lift more than 25 pounds occasionally, or to sit, stand and walk for up to six hours in a normal workday due to back pain . . . . She claimed that the base of her right thumb continued to be swollen and she would not be able to type for prolonged periods or shoot a weapon. . . . The claimant mentioned she had sleep apnea and she had difficulty with concentration and focus due to fatigue . . . .

AR at 16-17.

The ALJ's first ground for an adverse credibility finding was the lack of support for plaintiff's subjective complaints in the objective medical evidence. *Id.* An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but lack of objective medical evidence may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (asserting a lack of corroborative objective medical evidence may be one factor in evaluating credibility). Here, plaintiff's main complaints involve back and leg pain resulting from a slip and fall injury she sustained at work on June 7, 2011, and pain resulting from carpal tunnel syndrome. AR at 16-17; *see id.* at 49-62; P. Mem. at 7-15.

The ALJ noted a large portion of plaintiff's medical records were created in the context of her Workers' Compensation claim, and distinguished the requirements for a finding of disability under the two systems. AR at 17. The

ALJ noted plaintiff's physician, Dr. Michael Roach, reported her back symptoms were relatively mild as early as one month after her accident. *Id.* at 18; *see id.* at 339. By January 2012, plaintiff reported an 80% overall improvement in her symptoms. *Id.* at 18, 420. Plaintiff underwent right carpal tunnel release surgery and epineurolysis of the median nerve in February 2012. *Id.* at 18, 439. By her May 2012 evaluation, plaintiff had a full range of motion in her right wrist with no obvious motor or sensory deficit. *Id.* at 18-19, 487. The ALJ thus concluded plaintiff "responded well to the release surgery and could use her right upper extremity" within the assessed RFC. *Id.* at 19.

In August 2012, after plaintiff had returned to work, plaintiff failed to qualify for the weapon certification required for her past employment, and so was terminated from that job. *Id.* at 19, 32-33, 44, 54, 286, 289, 703. Plaintiff experienced increased pain in her right hand and wrist from gripping the weapon while attempting to fire. *Id.* at 19, 209. One month after this incident plaintiff had a normal physical examination during which her back was noted as stable and her right hand was doing well. *Id.* 19, 534; *see also id.* at 704 (recording plaintiff's "pain and symptoms are getting better" in October 2012 and recommending "only observation. No aggressive treatment at this time"). During plaintiff's consultative exam in July 2013, she rated her hand pain as a three of ten, described her leg pain as moderate, her foot pain as mild, and, as the ALJ specifically noted, she did not complain of any back pain. *Id.* at 19, 1030; *see id.* at 1041 (noting treating physician recorded similarly moderate complaints in January 2013).

The ALJ found the consultative examining physician's opinion of plaintiff's capabilities to be "somewhat overly optimistic." *Id.* at 20. Despite "the largely benign objective medical record" the ALJ reduced plaintiff's RFC below that opined by her treating and examining physicians, in part due to plaintiff's subjective complaints. *Id.* at 20. The ALJ gave great weight to the

agency consultant's reviewing opinion that plaintiff could perform only light work. *Id.*

Although the ALJ discounted plaintiff's subjective complaints, he did so to a far lesser degree than plaintiff's own treating physician and the consultative examining physician. The ALJ nonetheless did discount plaintiff's complaints, in part because he found them greater than expected from the objective medical evidence. Based on the evidence recounted by the ALJ, as set forth above, this was a clear and convincing reason supported by substantial evidence in the record.

The ALJ's second ground for an adverse credibility finding was that plaintiff's activities of daily living "suggest that she would be capable of performing work." AR at 17. The ALJ reviewed the testimony and found plaintiff:

> reported in September of 2012 that she could perform self-care tasks without difficulty, climb stairs by holding on, and lift 20 to 30 pounds with either hand; and she denied difficulty with driving, sexual function or sleep. Furthermore, [she] described the ability to perform household chores such as mopping the floor, albeit with breaks and assistance from her family members. During her qualified medical examination in July of 2013, [she] also admitted to a rather full range of activities of daily living despite her symptoms and alleged limitations. The claimant's ability to participate in such activities undermined the credibility of [her] allegations of disabling functional limitations.

*Id.* (internal citations omitted); *see id.* at 516; 904, 1030.

Plaintiff argues that although she testified about being capable of engaging in certain limited activities of daily living for brief intervals of time (*see* AR at 50), her reported daily activities do not undermine her subjective complaints

because she also testified she requires frequent rest periods in a reclined position with her feet up. P. Mem. at 15; *see* AR at 61; *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). But plaintiff's actual testimony was far more equivocal.

As the ALJ noted, plaintiff alleges totally disabling back pain, but "admitted that sometimes the pain was tolerable." AR at 16; *see id.* at 49 ("My back always aches . . . . Some days it's good"). Plaintiff indicated she might be able to "to sit, stand and walk for up to six hours" but "she did not know how she would feel if she persisted" with this level of exertion over an extended period. *Id.* at 17, 52-53, 61-62 (questioning whether plaintiff was really limited in her ability to sit or if she was just hesitant to push herself because she might not be able to persist at it). When more than one inference can reasonably be drawn from the record, this court will "'not substitute its judgment for that of the ALJ.'" *Aukland*, 257 F.3d at 1035 (quoting *Matney*, 981 F.2d at 1018).

Plaintiff's ability to independently bathe, dress, groom and maintain hygiene, walk, climb stairs, eat, manage money, monitor her medication, drive, shop, and cook (AR at 1029), notwithstanding her testimony about requiring naps, is inconsistent with her subjective complaints of totally disabling pain. *See id.* at 17. The cited inconsistency between plaintiff's daily activities and her alleged symptoms was a clear and convincing reason for finding her less than fully credible. *See Tommasetti*, 533 F.3d at 1039 (inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant less credible); *Bunnell*, 947 F.2d at 346-47

(same).

In addition, the ALJ convincingly pointed to other inconsistencies in plaintiff's testimony. Plaintiff "mentioned she had sleep apnea and she had difficulty with concentration and focus due to fatigue," but she indicated she was not using her prescribed CPAP machine despite the aid oxygen provided because of discomfort from the mask (*id.* at 17, 59-60), and at the hearing she "did not demonstrate or manifest any difficulty concentrating . . . follow[ed] the lines of questioning . . . and respond[ed] to the questions appropriately and without delay." *Id.* at 21; *see id.* at 60-61 (confirming with plaintiff's attorney "there is [nothing] in the medical evidence showing difficulty concentrating"); SSR 96-7p ("the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility"); *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

The ALJ's third main ground for an adverse credibility finding was the conservative course of treatment plaintiff received for her impairments. *Id.* at 19-20. The ALJ found "most significantly, [plaintiff] has remained on Ibuprofen for pain and she is no longer [taking] Soma or other similar drugs for nerve pain." *Id.* at 19; *see id.* at 62. She reported only taking the prescription Ibuprofen "on and off" as required for her pain. *Id.* Plaintiff also testified she did "not wear supportive races for her hands and wrist." *Id.* at 20; *see id.* at 62. The ALJ found "[t]his course of treatment suggests [plaintiff]'s symptoms were, and continue to be, well-controlled with conservative means before and after her right carpal tunnel release procedure." *Id.* at 20; *see Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") (citation omitted); *John v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (reasoning "conservative treatment" is indicative of "a lower level of both pain and functional limitation").

Plaintiff argues the ALJ failed to mention the observation of one agency employee who recorded the difficulty plaintiff had writing her name. P. Mem. at 6; *see* AR at 221 (noting plaintiff "had some difficulty writing her name"). But an "ALJ is not required to discuss evidence that is neither significant nor probative." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). As the ALJ noted, plaintiff did not pursue or request more aggressive treatment for her carpal tunnel. *Id.* at 19-20; *see Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (discrediting claimant because of his "failure to request, any serious medical treatment for this supposedly excruciating" impairment); SSR 96-7p ("the [plaintiff]'s statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

In sum, the ALJ provided clear and convincing reasons for discounting plaintiff's credibility, including lack of support in the medical records, her conservative course of treatment, and her inconsistent daily activities. Thus the ALJ did not err in finding plaintiff not entirely credible.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: September 28, 2016

SHERI PYM
United States Magistrate Judge